15-1823 Ryan Brown v. Kenneth Romanowski Oral argument, 15 minutes per side. Mr. Mohan for the appellant. Thank you and may it please the court. My name is Rajiv Mohan and I represent the appellant in this case, Ryan Brown. With the court's permission, I'd like to reserve five minutes for rebuttal. You may. When the government forgets about a criminal defendant and as a consequence loses crucial evidence that goes to the heart of a trial inexplicably delayed by more than two years, something is amiss under the speedy trial clause. Yet those are the facts that the court encounters in this appeal and the facts that entitle Ryan Brown to relief. In addressing Brown's speedy trial claim, this court applies the familiar four factors from Barker v. Wingo, and I'd like to start with the reason for the delay. The government here acknowledges that its efforts at prosecution were atypical and unusual. They were also grossly negligent, and that's because after the government obtained a warrant for Brown's arrest, it made no effort whatsoever to locate him. It failed to do so even though the government had all the evidence it needed to prosecute him, and even though the government knew exactly where to find him. The government only resumed its efforts at prosecution when, by sheer coincidence, Brown happened to be arrested in connection with a completely unrelated matter. The government's heightened culpability in this case compares favorably to the heightened culpability that this court found in United States v. Ferreira, that the Eleventh Circuit found in United States v. Ingram, and that the Eighth Circuit found in United States v. Arenas Luna. I'm sorry, what was the last one? United States v. Arenas Luna for the Eighth Circuit. Thank you. And indeed, just as in that case, the government here let Brown slip through the cracks. And the government's heightened culpability here, when combined with the 25-month delay here, gives rise to a presumption that Brown was prejudiced in his defense. Mr. Bohan, could I help you out here just a little bit? Sure. You've got these four factors. Yes. You can discuss all of them in any order you want, but the district court ruling here was based on no prejudice and overwhelming evidence of his guilt. So my constructive suggestion would be start with that one, and then if you've got any time left, work backwards. Sure. And let me also say that you start out with that this was, I forgot the phrase you used at the very beginning, but this was critical evidence in this particular case. That does not appear to be, that appears to be perhaps a little hyperbole when you look at what all the evidence was here. Sure. We have the testimony of the police officers, and admittedly, the actual video is, and we don't know what it would show, is missing, but there's a lot of evidence of guilt here. Sure. Let me address that argument directly. I think that is the government's main argument. It's the argument that the district court based its decision on, and I think it's wrong both as a matter of law and as a matter of fact. And the prejudice, as a matter of law, the prejudice standard under Barker does not require any sort of sufficient likelihood that the outcome at trial would have been different. This court rejected that sort of standard in the Maples case where it refused to infer the defendant's culpability or speculate about what a jury might find. Similarly, in Red v. South. It doesn't require, I thought that it did require an impairment of the defense. Impairment of the defense. So that's not just speculation. It's not as strong as Brecht or one of those prejudice standards, but it still does require something fairly specific. And, in fact, there's some language on the other side that this is only to be used in unusual cases. But the question would be, how did it not just at the edges, but impair the core of the defense? Sure. Well, I think that it's undisputed that Mirza's, Jawad Mirza, who was the confidential informant in this case, his testimony was critical to the trial. And the tapes could have helped by allowing Brown to cross-examine Mirza with greater effect and impugn his credibility. It doesn't, okay, but obviously since we don't know what was on the tapes, the tapes could have been completely devastating. This way you did raise, or your side, I guess you probably weren't the trial attorney, raised the absence of the tapes. The inference of incompetence or spoliation or connivance. You got all of that by saying, hey, you know, that's what he claims, but they had the tapes and they lost them. I don't think the trial counsel necessarily phrased the argument in those terms. He did recognize. They both on direct and cross, they indicated that, didn't they? They made clear that Detective Dare had lost the tapes. But I think inherent in Brown's defense at trial was the proposition that the tapes would have helped. Brown's defense at trial was very clearly that Mirza was lying. And inherent in that defense is the recognition that had the tapes been available, they would have helped Brown undermine Mirza's credibility. And there are a few ways in which the tapes. But you say, why is there that presumption? Why isn't it more simply we don't know? If there's not a presumption that Mirza's lying rather than he testifies and you've got this extraneous material that might have confirmed him or might not. I mean, it's just like the cases where the defense tries to test DNA, but it turns out the DNA is the defendant's. Absolutely. And I think that that recognizes the inherent difficulty of proving the content of lost evidence. And that's why this court in Red v. Souders explained that a good faith presumption should inure to the defendant. And that's all we're asking. A good faith presumption. A good faith presumption. And Red involved a defendant's claim that alibi witnesses had gone missing. The government disputed whether those witnesses even existed. And this court explained that a good faith presumption should inure to the defendant. But that's in a circumstance where, in effect, there's no contradictory evidence. The government just says, yeah, that's what he says and we don't know. Here we do have contradictory evidence. We have the testimony and we have the background of the whole event. You do have the other testimony, but I think if you use that other testimony to rebut the presumption in Red, it unfairly stacks the deck against criminal defendants. And that is because it's ultimately the jury's role to resolve any conflicts in the evidence. So we've never denied that there was other evidence against Brown. That was certainly the case. But it was ultimately the jury's role to resolve any conflicts. And if you simply say that other evidence proves that missing evidence would have confirmed the defendant's guilt, I think it would be very hard for a defendant to show actual prejudice in any case of missing evidence because there will very often be other evidence against the criminal defendant. Let's look at the evidence here. First of all, your guy confesses that he was the one that got the drugs for Misra, right? Correct. Now, his theory now is, well, Misra had the drugs all along. I just weighed them for him and so I'm not guilty, right? Correct. To determine what the evidence is on either his new story or his confession story, we look at what happened and the police testify that they searched Misra before he went out on this deal. And I've forgotten exactly what the facts are, but the police officer's testimony corroborates your own client's confession entirely, does it not? Well, I wouldn't say entirely. There were gaps. They did search Mirza before the buys. But, again, I would go back to the point that there were gaps in the government's case and the jury could have resolved any conflicts in Brown's favor. The officers were ultimately- But there weren't really any gaps. I mean, one guy says, I'm not sure whether I searched him or the other guy searched him. So, okay, you could call that a gap, but how are these things that you're calling gaps at all material to the case? Well, those are the gaps with respect to dim memories. I was referring to other weaknesses in the government's case, namely that the officers, when they were witnessing these encounters, never actually saw Brown in possession of cocaine. The officers never recovered the marked bills that Mirza allegedly gave to Brown, and the government never tested the cocaine that Mirza handed over for fingerprints. And, of course, this court need not even reach the question of actual prejudice because I think a presumption of prejudice is warranted in this case. And even if this court thinks that the tapes ultimately would not have sufficed to establish actual prejudice, I think they are a strong indication that the presumption of unidentifiable prejudice is particularly plausible here. A case where the government forgets about a criminal defendant and loses evidence, however crucial or not, is a case where there is likely to lurk unidentifiable evidence of the sort that underpins the presumption. And I think the presumption is far more plausible here than in, say, Ferreira, where, as Judge Ketledge's dissent pointed out, there is not even a whiff of actual prejudice. And I see my time is running out, so if the court has no further questions. Okay, thank you. You'll have your five minutes for rebuttal. Good morning, Your Honors. May it please the court, Raina Corbachus from the Michigan Attorney General's Office on behalf of Respondent Appellee Kenneth Romanowski. The state asked this court to affirm the district court's denial of habeas relief. The district court in this case issued a very thorough, well-reasoned opinion, and the state agrees with its ultimate finding of no speedy trial violation. The district court gave Petitioner generously the benefit of starting the speedy trial clock beginning in January of 2006, but as noted in our brief, the state believes that the clock shouldn't have started until September of 2007. That's when Petitioner was arrested and held to answer for these drug crimes. And the period of delay between his second arrest in September of 2007 and his trial in February of 2008 was approximately five months. That's not an uncommonly long delay, and it wouldn't be sufficient to trigger review of the remaining Barker factors. But even if Petitioner is given the benefit of the time between his first arrest and trial, and he gets de novo review, as the district court did in this case, there is no speedy trial violation, and that's essentially because he can't show prejudice. I would like to briefly note that the reason for the delay in this case, the district court did weigh it in Petitioner's favor, but not substantially, and that's exactly right. There is absolutely no evidence that the prosecution in this case was motivated by bad faith or to get some kind of tactical advantage in delaying, and Petitioner admits that there's no evidence of this in his brief. But at most, it was simple negligence on the part of the government. And I also want to comment on the third factor, which is the assertion of the right. Petitioner in this case did not assert the right, and that should weigh heavily against him because when he did have a forum to assert it, when he was arrested in September of 2007 and beyond, he never asserted it all throughout trial. He didn't assert it until three years after trial in a motion to amend his motion for relief from judgment. He claims that he wanted to raise it. He has an affidavit that is not sworn where he claims he wanted to raise it on direct appeal, but he could have filed a supplemental brief, pro per, in the Michigan Court of Appeals to raise it, but he didn't. And I also wanted to point out that if the court looks at the docket sheet in this case, there was a period of time between one and a half to two months, beginning in November of 2007 through some point in January of 2008, where Petitioner was asking for adjournments. And it totals up to about one and a half to two months, and that also indicates that he wasn't concerned with his speedy trial. But turning to the prejudice factor, which is the most important factor, that is very much in the state's favor. Let me stop you there for one second. The part about his asking for adjournments, when you say he could have raised it, I guess I thought the theory would be that really most of the damage was done by the time he was physically arrested, and what he should have done was right then say, you know, it's been what, 20 months, 18 months, something like that, since these events happened, and that's the problem, and I want you to dismiss my indictment because of the speedy trial violation. Right, and he never... Yeah, but once that didn't happen, the fact that he waited a little bit more for trial probably didn't hurt him additionally. Well, I think Barker says that failing to assert the right when you have an opportunity makes it tougher to show that it was violated, and here he did have the opportunity during that entire time, and he never raised it until some three years after trial. Turning to the prejudice factor, that is very much in the state's factor. Petitioner describes the loss of the tapes as crucial evidence. It's completely speculative, wildly speculative to assume that they would have helped or proven his innocence in this case, and as Judge Boggs pointed out, the fact that the tapes were missing, trial counsel in this case used that to argue reasonable doubt in the case. He made it clear to the jury that the tapes were lost, and he used it to petitioner's advantage in closing and throughout trial when he was cross-examining the police officers to argue that there was reasonable doubt in the case. Nobody had heard petitioner say anything about selling drugs, and so it was used... Sort of alternative theory about he was just weighing this. Was that presented to the jury? That is, did he testify, or did they try to argue it even without testimony, or is that something that only has come up later on? That he was... I'm sorry. That he was only... As I understood it, the theory was, well, you know, he didn't have the drugs, he wasn't distributing them, he was just weighing them for his friend. I don't know that that was brought up at trial. I think that came up later on. At trial, the defense was essentially that they attacked the credibility of MRSA. They said that there was no evidence that anyone had seen any of the transactions, and that the recordings were lost, and that was problematic for the prosecution. The district court in this case properly found that there was no prejudice, and it aptly described the evidence against petitioner as extremely strong and exceptionally strong, and that's exactly what it was. And the most overwhelming evidence against him was his own confession, and that was admitted at trial, where petitioner in part said, I did it, I got the drugs for him, and this happened about four times, essentially, and there were other parts to that confession. But that was admitted at trial, and that was hugely damaging, as even trial counsel acknowledged in closing, too, as it being a compelling piece of evidence. But there was, in the end, no real response to it. There was nothing that could be done with that. You also had MRSA's testimony about buying the drugs from petitioner. You had Police Officer Spencer's testimony corroborating much of MRSA's testimony. You had Detective Dare testifying about how he had searched MRSA, the car, and personally before any of these buys, and that rebuts petitioner's claims that it was MRSA's cocaine. And I just want to point out that the last buy, when it was, and it was just MRSA and petitioner in the car on prior buys, too, but when they ultimately did come in and arrest petitioner, it was just petitioner in the passenger seat, and just MRSA in the driver's seat of the car. They escort him out of the car, and the cocaine is found on the passenger side of the car, exactly where petitioner was sitting. So the evidence in this case, as the district court described, was exceedingly strong, and even if there is somehow a presumption of prejudice by the delay, which the state contends there shouldn't be, but even if there was a presumption of prejudice, the state has rebutted it in this case. The court has any questions? There isn't any claim in this case that he was coerced into confessing or anything like that, is there? There was a claim, and there was a Walker hearing held right before trial where the trial court heard petitioner testify and Detective Dare testify, and specifically found petitioner not credible. For some reason I thought this was the case where Brown himself says he voluntarily went to the police station and gave a statement. He wasn't under arrest, and he was free to leave. He does say that, too. There is a portion of the record which I believe he attached to either the motion for relief from judgment or the amendment where they were investigating him for a child. He argues that this officer said, you will take your children away if you don't do this. He voluntarily went there, but at least his argument, which was rejected by the trial judge, was that there was this coercive statement. Yes, and the trial court's credibility findings should be given deference in this case. The state respectfully asks that the district court's denial be affirmed. Thank you. We have five minutes for rebuttal. Thank you. I'd just like to start with a couple of discrete points before a few more general closing thoughts. This dispute about whether or not Brown went to the police station voluntarily on the night of January 10, I think the record pretty clearly indicates that he was arrested. Every officer testified that Brown was formally arrested. They assembled an arrest team. Brown himself testified during the pretrial evidentiary hearing that he remembered being arrested on the night of January 10, and the Children's Protective Services document that the government refers to is entirely hearsay. It's the government's account of what Brown allegedly told them, and I would respectfully submit that given the other weight of the evidence concerning the arrest on the night of January 10, it's quite clear that Brown was arrested that night. With respect to the length of the delay, this court's decision in the United States versus Brown I think directly resolves that question. In that case, the defendant had been arrested, released the same day, charged in a complaint a few months later, and indicted a few months later still. This court held that the delay started upon his first arrest, and the facts here are indistinguishable. Now I'd like to turn to the supposed overwhelmingness of the evidence against Brown, because I think it's quite clear that that's animating the government's argument and the court's concerns about this case. And I would simply submit that this is an argument that has been made in prior cases that this court has rejected. I think if you look at Judge Merritt's dissent in Red versus Souders, his complaint was specifically that there could be no prejudice in that case because the evidence against the defendant was overwhelming. And in cases like Maples, Red, Dixon, in all of those cases the government disputed what the missing evidence would have revealed and whether or not it would have helped the defendant. And this court rejected those arguments in each of those cases. And I think... Well, his dissent would have found that there was no prejudice because the evidence was overwhelming. And I think that proves that the majority rejected any sort of standard under which the overwhelmingness of the evidence precludes a finding of prejudice. And I think that this court can write a relatively narrow opinion ruling in Brown's favor here. The facts here are unique by the government's own admission. There aren't too many cases where the government, where missing evidence is present, and there are fewer cases still where the government is directly at fault for that missing evidence. And those facts inform the reason for the delay, the presumption of prejudice, and actual prejudice. And I think it follows that this court can write a relatively narrow opinion that does not open the door to every defendant with a two-year delay being able to come to this court and claim an entitlement to relief. And finally, I would just point out that I think when you place this case in the context of the relevant precedent, cases like Red, Maples, Dixon, Arenas, Luna, and Ingram, I think the facts here compare quite favorably. And those cases appear nowhere in the government's response brief. The government offers no response to them today. And I would simply urge the court to give a fair consideration to those cases and the facts here because I think that the lawful outcome here is to grant Brown relief. And if there are no further questions... Thank you, counsel. And we appreciate you and your firm taking this under the Criminal Justice Act. It's a service to our system of justice. Thank you. That case will be submitted, and the clerk may adjourn court. This appointed court is now adjourned.